# Woldert Grocery Company *v.* Wilkinson, Appellant.

*Contract—Sale—Breach—Measure of damages.*

In an action to recover the price of a carload of Pecan nuts ordered in Texas and shipped to Philadelphia, it appeared that before the nuts were shipped from Texas, defendant attempted to repudiate the contract, but to this the plaintiff refused to consent. At the time the goods were shipped, the nuts had fallen so much in price in Texas that only a nominal sum could have been realized from their sale. When the car arrived in Philadelphia, it was opened by defendant, and after inspection of the nuts, they refused to take them on the ground that they were not up to the quality contracted for. The plaintiff's agent sold the goods in Philadelphia. *Held* (1), that the verdict of the jury in favor of the plaintiff established that the quality of the nuts was up to the contract standard, and that the defendant's breach was without justification; and (2) that the measure of damages was the difference between the

contract price and the fair market value of the goods at Philadelphia at the time of the breach.

Argued Oct. 22, 1908. Appeal, No. 94, Oct. T., 1908, by defendants, from judgment of C. P. No. 5, Phila. Co., Sept. T., 1903, No. 349, on verdict for plaintiff in case of Woldert Grocery Company v. James Wilkinson et al., trading as C. Wilkinson's Sons. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit to recover for breach of contract of sale.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,256.50. Defendants appealed.

*Errors assigned* were various rulings on evidence not incorporating in the assignments the evidence admitted, various refusal of points without setting forth the refusal totidem verbis, and certain instructions as to the measure of damages sufficiently appearing in the opinion of the Superior Court.

*William MacLean, Jr.,* and *William B. Crawford,* for appellants.—If the appellee elected to regard the countermand as a breach of the contract then it was its duty to sell the nuts promptly, or at the latest at the time when the car should have been delivered in Texas to the appellants, and at the market value at that time and place: Laubach v. Laubach, 73 Pa. 387; Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Guillon v. Earnshaw, 169 Pa. 463; Hooper, Seving & Co. v. Bromley Bros. Carpet Co., 11 Pa. Superior Ct. 634; Boyd v. Merchants', etc., Peanut Co., 25 Pa. Superior Ct. 199.

*Samuel Scoville, Jr.,* with him *Harris S. Sparhawk* and *Charles H. Edmunds,* for appellee.

OPINION BY HEAD, J., April 12, 1909:

It is conceded the plaintiff company and the defendants entered into a contract, the former to sell, the latter to buy, a car

load of pecan nuts. The contract, made in August, 1902, as to quality of goods and time of shipment, provided as follows: "better than ave. of S. W. Texas. Ship not later than 15th Nov. 1902." By a letter dated October 23, 1902, the defendants undertook, of their own motion, to cancel the contract. To this the plaintiff refused to assent, and so notified defendants. On November 8, plaintiff wired defendants that the car of pecans was loaded and that, "unless otherwise instructed will leave Monday via Galveston for Philadelphia." To this there was no reply. The car was shipped and the defendants advised by wire of its due time in Philadephia. As to the manner of shipment the following testimony is undisputed: "The car was shipped to Woldert Grocery Co. at Philadelphia, notify C. Wilkinson and Sons, bill of lading attached to draft. The pecans were to be delivered on presentation of bill of lading which was attached to the draft to the amount of the invoice. This is the customary way of shipping pecans out of Texas."

The shipment consisted of 279 sacks of nuts. Upon the arrival of the car in Philadelphia, the defendants, having first secured the services of an expert, took him to the car and had him open some of the sacks, twenty-five as he testifies, and inspect the contents. They themselves opened perhaps as many more. On December 1 they wired to plaintiff, "cannot accept car pecan nuts, they are not up to grade as per contract;" and on the same day confirmed this by a letter more fully stating the result of the inspection and their determination to reject the nuts because of their alleged inferior quality. Thus was raised an issue of fact, the only one as to which the testimony developed any serious contention between the parties. As the case was tried this question was fairly submitted to the jury, and their verdict conclusively establishes that the quality of the nuts was up to the contract standard and the defendants' breach was without justification. What then was the true measure of plaintiff's damages?

The appellants present twenty-two assignments of error. The first, second, third, sixth, eighth, ninth, thirteenth, fifteenth, seventeenth, eighteenth and nineteenth are manifestly in violation of the rules of this court, and the motion to quash

them must be granted. The remaining assignments may be grouped together, and the substantial questions raised by them we will now briefly consider.

It is first contended that the point of delivery, under the contract expression "f. o. b. Texas," was Texas. That if the plaintiff, accepting the letter of October 23 as a final repudiation of the contract by the defendants, chose to exercise its right to sell the goods on the market, and recover, as damages, any difference between the contract price and the market price, it was obliged, under the law, to select the market existing at the time and place named for delivery, and therefore should have sold the nuts in Texas. To this proposition the record discloses two answers. After the plaintiff had given notice of its determination not to permit a cancellation of the contract, it was not obliged to assume that if the car reached its destination in due time, loaded with the quantity and quality of goods contracted for, the defendants would insist on a flat repudiation of their engagement. Every fair presumption of law or morals would seem to support the opposite conclusion. And so it appears that when the car reached Philadelphia, the defendants themselves were not willing to stand on the ground that they had already and finally repudiated their contract. They then undertook, as already stated, to open up the goods, inspect the quality and then by telegram and letter based their final rejection on the allegation that the plaintiff had failed to comply with the contract. Had the controlling fact been found by the jury in their favor, their position would have been impregnable and the plaintiff left without a cause of action. With the finding adverse to them they are in no position to assert that they had finally committed themselves to a repudiation of their contract before the car left Texas.

But the testimony shows, and it is uncontradicted, that when the time for shipment, fixed by the contract, had arrived, the Texas market had "slumped," "there was no market," and that if a sale had been forced there, only a nominal price for the goods would have been received. Without attempting to recite the testimony in detail we may say it further appears that, by bringing the car of nuts to Philadephia, and then going to the

further expense of having them polished to meet the demand of the trade there, the plaintiff reached the best market available, so far as the evidence tends to show, and thus honestly sought to minimize for itself and the defendants as well, the injurious consequences of the wrongful breach of the contract by the latter. Upon what theory then may the defendants be heard to complain? There is no hard and fast rule of law declared by statute or otherwise that undertakes to prescribe precisely what a vendor of goods must do after he has performed his part of the contract of sale and is confronted by an unwarranted refusal on the part of his vendee to receive the property. The general rule, in the absence of peculiar and qualifying conditions, doubtless is as contended for by the appellants: Hooper, Seving & Co. v. Carpet Co., 11 Pa. Superior Ct. 634; Guillon v. Earnshaw, 169 Pa. 463; Moody v. McTaggart, 29 Pa. Superior Ct. 465. The following language, quoted from the opinion of BEAVER, J., in the case last cited, seems to us to precisely fit the case at bar: "What the plaintiffs did was evidently in the interest, and for the benefit, of the defendants and we know of no legal ground or principle of equity on which they will be heard to successfully claim that the plaintiffs should have sued them for the entire purchase price of the cargo of coke rather than for the amount which remained after deducting the amount for which they were enabled to sell it in the best market, at the best price obtainable." So we say here. It having been established that the defendants unwarrantably repudiated their contract and left the goods they had agreed to buy in the hands of the vendor, a legal liability to pay the consequent damages arose. The whole of the evidence clearly points to the conclusion that the measure of these damages applied by the learned trial court and adopted by the jury was at least as favorable to the defendants as any other that could have been followed.

The defendants were earnestly urged to keep their contract and accept the car; but they firmly adhered to the position that the goods offered were not those contracted for and hence they were not bound. They were notified that unless they accepted within three days "we would have to resell the car and sue him [them] for the difference.'

There was substantial evidence from the plaintiff's representative of the efforts he made to find the best buyer and of the condition of the market as disclosed by the offers he received during those efforts. It was surely competent for the jury to draw from this evidence the conclusion that the price actually received on the resale was certainly not less than the general market price. The instruction of the learned trial judge was: "If you should find on this main question in favor of the contention of the plaintiff, then the plaintiff is entitled to receive at your hands by way of damages for the breach of the contract the difference between the contract price and the fair market value of the goods at the time of breach." Of this the defendants cannot justly complain. Finding no reversible error in the record of the trial, the assignments of error not quashed must be overruled.

Judgment affirmed.