## Rambo *v.* Regar & Regar, Appellants.

*Contracts—Vendee—Vendor — Delivery — Failure to perform terms of contract.*

In an action of assumpsit for a breach of contract, it appeared that the parties had entered into an agreement for the purchase of a textile mill company, and that among other considerations, the vendee agreed to take three-eighths of all of the silk and silk thread for which the vendor had contracted.

At the time of the execution of the contract, the vendor had cancelled a contract for certain silk materials on which a recovery was subsequently made by the seller.   The plaintiff-vendor, then attempted to compel the defendant-vendee, to contribute three-eighths of the amount recovered, claiming that the same was comprehended in the contract of sale.

*Held:* That the contract with the third party had not entered into the agreement of sale; that defendants were only bound to take such materials as were actually delivered by the plaintiff-vendor, and that there having been no delivery of materials under the contract in dispute, the judgment should have been entered for the defendant.

Argued March 11, 1924. Appeal, No. 144, Oct. T., 1923, by defendant, from judgment of C. P. Montgomery Co., No. 121, April T., 1921, on verdict for plaintiffs in the case of Rambo & Regar, Inc., v. Howard K. Regar, H. Severn Regar and Gordon R. Regar. Before OR-LADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit for breach of contract. Before MILLER, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court entered judgment in favor of the plaintiff in the sum of $1,135.63. Defendant appealed.

*Errors assigned* were, among others, in dismissing exceptions, various findings of fact and conclusions of law, and the decree of the court.

*Irvin P. Knipe,* for appellants.—The individual appellants contracted to buy material from the vendor corporation and never assumed the corporation's liabilities for broken contracts: 35 Cyc. 586; Franklin Sugar Refining Co. v. Howell, 274 Pa. 190; Echard Coal & Coke Co. v. Mudge, 234 Pa. 86, 9 Cyc. 698; Shamlian et al. v. Waxman, 80 Pa. Superior Ct. 73; Ætna Explosive Co. v. Diamond Alkali Co., 277 Pa. 392.

*Henry I. Fox,* for appellee, cited: Zuck v. McClure & Co., 98 Pa. 541, 545; Woldert Grocery Co. v. Wilkinson, 39 Pa. Superior Ct. 100; Barber Milling Co. v. Leicht-

hammer Baking Co., 273 Pa. 90, 6 R. C. L. 835; Atherton
v. Clearview Coal Co., 267 Pa. 425, 432; 6 R. C. L. 1047.

OPINION BY PORTER, J., October 13, 1924:

The plaintiff, a Pennsylvania corporation, seeks to recover of the defendants in this action damages for an alleged breach of a written contract. The court heard the case without a jury, under the Act of 1874, found in favor of the plaintiff and the defendants appeal.

The plaintiff corporation operated mills in Norristown, Bridgeport and Conshohocken. The defendants were holders of stock in said corporation and on May 29, 1920, entered into a written contract for the sale to the corporation of 1,403 shares of its capital stock, for the price of $220 per share, the total price to be paid on or before June 15, 1920, not in money, but by the conveyance to the defendants of the Bridgeport mills at a valuation of $70,000, the delivery to them of certain silks and yarns at the cost price thereof, the rib frames necessary to equip the Bridgeport mill, the value to be determined as provided in the agreement, certain goods in process of manufacture, the value thereof to be fixed as provided in the agreement, and the balance, if any, of said consideration for the stock to be paid in bonds of the plaintiff corporation. In the event that the property to be taken over by the parties of the second part, the defendants, exceeded the purchase price of the stock, the defendants, were to pay or secure to the corporation such excess. The Bridgeport mill was conveyed to the defendants in accordance with the terms of the contract and the personal property was delivered in accordance with the provisions thereof. The only provisions of the contract which it is necessary to quote in detail and consider in this case are as follows: "In further discharge of said consideration (the purchase price of the stock), the said parties of the second part agree to accept, and the party of the first part to transfer and convey, three-eighths of all thread silk

and yarn of every kind owned by the said party of the first part, except 36-2 and 50-2 mercerized and bleached, at the cost price thereof, and further to assume the same proportion, namely, three-eighths of all thread silk, and yarn, except as above, under contract by the said party of the first part and not yet delivered, at the cost price thereof." . . . . . . "In the event that the property to be taken over by the parties of the second part on the terms specified shall exceed the purchase price of the stock, the parties of the second part shall pay or secure to the party of the first part such excess." "The party of the first part shall take such legal steps as may be necessary to convey a legal title to the property hereinbefore mentioned to be conveyed and to carry out the terms of this agreement."

The plaintiff corporation contends that under the covenants above quoted it is entitled to recover of the defendants three-eighths of the amount of money it paid in compromise of an action for damages brought against it by Pels & Company, a New York corporation, for an alleged breach of contract for a sale of silk by the latter to the former. The alleged claim of the Pels Company against the plaintiff arose as follows: Under a written contract, dated July 9, 1919, the Pels Company undertook to deliver and the plaintiff corporation to receive and pay for 6,000 lbs. of silk at $11.35 per lb., to be delivered during the months of November, December and January following, in weekly amounts of 500 lbs. each. Notwithstanding the express terms of this contract the first shipment under it was billed March 2, 1920, seventeen shipments in all were made, aggregating 1,958 lbs., the last on April 26, 1920. All the silk shipped was duly paid for.

On May 3, 1920, when 4,441 lbs., 15 oz., of silk specified in the contract remained undelivered, the plaintiff wrote to the Pels Company cancelling the contract, upon the ground that the silk had not been delivered during November, December and January, as by the contract

required.  The Pels Company, on May 4, 1920, replied to this letter refusing to accept the cancellation of the contract, to which the plaintiff made no reply.  This was the condition of affairs when the defendants, on May 29th, executed the contract to sell their stock.  Upon this point the court below found as follows: "12. When the agreement of May 29, 1920, was executed the situation with regard to the Pels contract was, therefore, that Rambo & Regar, Inc., had given notice of cancellation and the Pels Company had refused to accept it.  Subsequent correspondence, which passed between the corporations in the month of June, merely showed a consistent adherence by both to the respective positions which they had taken by their letters of May 3rd and 4th, 1920."  The plaintiff corporation, in reply to a letter of Pels & Company, bearing date June 18, 1920, urging the plaintiff to receive the silk, had on June 22d, written saying that they had nothing to add to their letter of May 3d, which had ordered the cancellation of the contract.  The court found that on May 29th, when the contract between the plaintiff and the defendants was executed, all the parties were acquainted with the negotiations with regard to the Pels contract.  There was not a scintilla of evidence tending to establish that the defendants knew anything about the negotiations between the plaintiff corporation and the Pels Company during the month of June, 1920.  The court found, and the evidence established, that "some time immediately prior to July 21, 1920, Howard K. Regar 'phoned to the plaintiff asking for information concerning the quantities of silks and yarns which the defendants were obligated by the contract of May 29, 1920, yet to accept under contracts of the plaintiff corporation that were in force on June 1st and not completed, whereupon by letter dated July 21st, the information was given in great detail.  It mentions many contracts for yarn with five different manufacturers and three for silk with one concern, but makes no mention of the Pels contract."  On July 23, 1920, the plaintiff wrote

to the defendants advising them that there was likely to
be a suit about the Pels contract and asking whether it
would be satisfactory to the defendants if they could
compromise it or deemed it advisable to let them carry
on the suit, upon receipt of which letter Howard K.
Regar telephoned to the officers of the plaintiff that he
was not interested.

On August 26, 1920, Pels & Company brought suit
against the plaintiff corporation, and in the statement
averred its breach by defendants as of May 3, 1920, and
claimed damages in the sum of $9,498.36, with interest,
to which suit Rambo & Regar, Inc., filed an affidavit of
defense, and averred therein that its cancellation of May
3, 1920, was justifiable in the circumstances, and set up
a counterclaim, based on losses by reason of delays in
delivery of the slk which it had accepted under the con-
tract, of $11,772.50. After the case was on the trial list
Howard K. Regar was invited to come to the office of
counsel for plaintiff and did so, but when he was in-
formed that the purpose of the meeting was to come to
some conclusion with regard to the disposition of the
case, he stated that the defendants had no interest in
the matter and refused to participate in the conference
and left the office. The plaintiff subsequently settled
the litigation with the Pels Company and paid to the lat-
ter the sum of $3,028.36. They seek in this action to re-
cover three-eighths of that amount.

The court below based its decision upon the ground
that the notice of the plaintiff corporation to the Pels
Company, on May 3, 1920, did not abrogate the contract
unless the Pels Company accepted the cancellation, and
that as the Pels Company promptly declined to accept
the cancellation the plaintiff corporation remained
bound by the contract to receive the silk. This was un-
doubtedly a sound conclusion of law, as between the
plaintiff corporation and the Pels Company: Barber
Milling Company v. Leichthammer Baking Co., 273 Pa.
90. In this case, however, we are dealing with the con-

tract between the plaintiff corporation and the defendants, in which there was no covenant that the defendants should be liable for any breach of contract by the plaintiff corporation.    It was an admitted fact in the present case that all the parties knew in what relation the plaintiff corporation stood to the Pels contract on May 29th when they entered into the contract with which we are now dealing.    The plaintiff corporation had ordered the cancellation of the Pels contract and all the facts and circumstances and the subsequent conduct of the duly authorized officers of the plaintiff corporation disclosed that they intended to stand upon that cancellation and not accept any silk from the Pels Company.    If it had been the intention of the parties that the defendants should become liable for any part of the damages which the plaintiff company might be required to pay because of its failure to take the silk from the Pels Company it ought to have been so specified in the contract.    The evidence clearly disclosed and the finding of the court below above quoted established that the plaintiff corporation strictly adhered to the position that it had cancelled the contract on May 3, 1920.    The covenant of the present contract hereinbefore quoted that the defendants "In further discharge of said consideration (the price of the stock) . . . . . . to assume the same proportion, namely, three-eighths of all thread silk, and yarn, except as above, under contract by the said party of the first part and not yet delivered, at the cost price thereof"; did not constitute these defendants parties to the Pels contract.    It was a covenant to accept, as part payment for the stock which they were selling, three-eighths of all thread silk and yarn then under contract by the plaintiff corporation and not yet delivered, at the cost price thereof.    The cost price of this silk and yarn was to be credited by the defendants to the plaintiffs on the purchase price of the stock.    The defendants undertook to pay nothing to the Pels Company or any other seller from whom the plaintiff was to receive the property.    If the

price of silk had gone up and the Pels Company had refused to deliver these defendants would have had no right of action against the Pels Company, they would have had to look to the plaintiff corporation to enforce their rights. The silk thread and yarn was to be delivered by the plaintiff corporation to the defendants and they covenanted, as above quoted, to "take such legal steps as may be necessary to convey a legal title to the property hereinbefore mentioned to be conveyed and to carry out the terms of this agreement." These covenants cannot be construed to impose an obligation upon these defendants to reimburse the plaintiff corporation for any part of the damages which the plaintiff might be called upon to pay for its own refusal to accept silk and yarn under a contract which it had cancelled prior to the making of this agreement, and upon which cancellation all the parties then understood that it was to stand. Even if it be held that the covenant would have required the defendants to accept three-eighths of the Pels Company silk at the cost price thereof the fact still remains that they would have had to accept it from the plaintiff corporation and the latter would have been required to make the delivery. Until the delivery was made, or properly tendered there would have been no breach of contract on the part of the defendants: Fairfax Textile Mills, Inc., v. Feingold, 273 Pa. 73. If, therefore, the defendants, under the covenants of their contract, could have been required to accept three-eighths of the silk undelivered under the Pels contract and credit the plaintiff corporation with the cost price thereof, the plaintiff corporation would have been required to first receive the silk from the Pels Company and deliver it to the defendants. Under the findings of fact by the court below the plaintiff was not entitled to recover and the assignments of error are sustained.

The judgment is reversed and judgment is now entered in favor of the defendants.