ELECTRIC REDUCTION COMPANY OF CANADA, LTD., et al.
*v.* CRANE, et al.

No. 41487 May 23, 1960 120 So. 2d 765

*Ricketts & Weston,* Jackson, for appellants.

*Wm. J. Threadgill,* Columbus, for appellees.

*Roger C. Landrum,* Columbus, amicus curiae

KYLE, J.

The Electric Reduction Company of Canada, Limited, and Shields Sims, Commissioner, have appealed from a judgment of the Circuit Court of Lowndes County, sustaining the motion of W. H. McClanahan, Jr., respondent, to set aside an order of the judge of said circuit court entered in vacation on July 24, 1959, honoring letters rogatory issued by the Supreme Court of Ontario, Canada, in a cause pending in said court, styled, "Electric Reduction Company of Canada, Limited, Plaintiff, v. George J. Crane, Defendant," for the taking of the oral testimony of the said W. H. McClanahan, Jr., as a witness in said cause, and dismissing with prejudice the peti-

tion for citation for contempt filed against the said W. H. McClanahan, Jr., for refusal "to answer questions in the proceeding on the subject of dealings with, and knowledge of the multi-polar cell constructed by American Potash Company near Aberdeen, Mississippi", for the reason hereinafter stated.

The record shows that Shields Sims on July 24, 1959, filed a petition in the Circuit Court of Lowndes County, asking that said court enter an order honoring letters rogatory issued in the above styled cause by the Supreme Court of Ontario on May 14, 1959, and addressed "To the Supreme Court of the State of Mississippi, or to any other court, judge, or tribunal having competent jurisdiction in the State of Mississippi," and requesting that the court issue process for the said W. H. McClanahan, Jr., requiring him to appear before the petitioner to answer on oath or affirmation the several questions that might be put to him by the parties in said cause. The said letters rogatory were attached as an exhibit to the petition and made a part thereof. There was also attached to the petition a copy of an order of the Supreme Court of Ontario entered in said cause, directing that a commission be issued out of said court to the said Shields Sims for the examination viva voce of the said W. H. McClanahan, Jr., as a witness on behalf of the plaintiff, at Columbus, Mississippi, and ordering that letters rogatory be issued out of and under the seal of said court, addressed to the Mississippi Court and requesting that the Mississippi Court honor the same and issue process for the purpose of compelling the attendance of said witness to be examined before such person as the court should appoint. Upon the filing of the above mentioned petition, the judge of the Circuit Court of Lowndes County on the same date entered an order honoring said letters rogatory and directing the clerk of said court to issue a summons for the said W. H. McClanahan, Jr., requiring him to appear before the said Shields Sims, Commissioner, on Saturday, July 25, 1959, to answer on oath

or affirmation the questions which might be put to him by the parties to the above mentioned suit.

The record shows that a summons was served personally on W. H. McClanahan, Jr., on July 24, 1959, requiring him to appear at the time and place set for the taking of his deposition, and that McClanahan appeared in response to said summons, and by his attorney announced to the commissioner that he waived any insufficiency of the notice given him but declined to answer questions in the proceeding on the subject of his dealings with, and knowledge of the multi-polar cell constructed by American Potash Company near Aberdeen, Mississippi, "for the reason that said W. H. McClanahan, Jr., executed a non-disclosure agreement with respect to the work performed on said project, under the terms of which said agreement all information given said witness is required to be kept confidential, and that neither the Supreme Court of Ontario nor the Commissioner appointed by said Court has jurisdiction or authority to compel the testimoney of said witness." The commissioner, by an order dated July 25, 1959, overruled McClanahan's objection to testifying concerning the subject matter mentioned above and adjourned the hearing for such other and further proceedings that might be proper for compelling the witness to answer the questions.

The petition for a citation for contempt for failure to answer questions propounded to him by the commissioner was filed on July 29, 1959. The respondent filed his answer to the citation on September 1, 1959.

The respondent in his answer to the petition for citation for contempt admitted that the letters rogatory had been issued by the Supreme Court of Ontario, and that a commission had been issued by said court to Shield Sims authorizing him to take the deposition. The respondent stated in his answer that the commissioner had on May 27, 1959, entered an order sustaining his objections to being required to answer, and that the Supreme Court of Ontario had overruled the order of the commis-

sioner sustaining the respondent's objection. The respondent averred in his answer that his refusal to answer questions before the commissioner was fully and completely justified, lawful and proper, for the several reasons stated as follows: (1) That the respondent had theretofore entered into a nondisclosure agreement with C. F. Braun & Company, of Alhambra, California, the general contractor for American Potash and Chemical Corporation in connection with said project, dated April 14, 1958, a copy of which was attached to the respondent's answer; (2) that neither the said C. F. Braun & Company, the general contractor, nor American Potash & Chemical Corporation was a party to the proceeding before the commissioner or to the action pending in the Supreme Court of Ontario styled Electric Reduction Company of Canada, Limited, plaintiff, v. George J. Crane, defendant; (3) that no evidence relating to the work accomplished in connection with the aforesaid project was or could be relevant to the issues involved in the suit pending in the Supreme Court of Ontario; (4) that to compel the respondent to answer questions concerning the work done upon the above mentioned sodium chlorate plant would require a disclosure by respondent of certain trade secrets of American Potash & Chemical Corporation, and would deprive said corporation of its property without due process of law; (5) that the purported letters rogatory were in the nature of a discovery proceeding which is unauthorized by the laws of the State of Mississippi; and (6) that the purported letters rogatory were unlimited in scope and were therefore unreasonable, unlawful and unsanctioned by the laws of the State of Mississippi.

The terms of the nondisclosure agreement referred to in the respondent's answer are set forth in the copy of a letter attached to the respondent's answer dated April 4, 1958, signed by C. F. Braun & Company, and addressed to Mr. Harris McClanahan, D. S. McClanahan & Son, Columbus, Mississippi. By the terms of the agreement

the respondent agreed that all information given to him by C. F. Braun & Company would be kept confidential by D. S. McClanahan & Son within their own organization, and would not be disclosed to others for use for purposes other than in connection with completing the work as described in the subcontract referred to therein. In the agreement McClanahan also agreed to return to C. F. Braun & Company, any drawings, designs, tracings, prints and other technical data supplied to McClanahan in connection with the work at the Aberdeen plant.

The respondent also filed with his answer a motion to set aside the vacation order of the court dated July 24, 1959, honoring the so-called letters rogatory and directing the issuance of a subpoena for him, requiring him to appear before the above named commissioner to submit to oral examination as a witness in the suit pending in the Supreme Court of Ontario; and the respondent asked that the contempt citation be quashed. For grounds of said motion the respondent reiterated the grounds for refusal to answer the questions as set forth in his answer; and as additional grounds for said motion, the respondent stated: ''The obvious purpose of the so-called letters rogatory, seeking an unrestricted and unrestrained oral examination of the witness is to beset the witness with impertinent inquiries calculated to pry not only into his private and privileged affairs and to subject him to personal liability and to the penalty of fine and imprisonment for contempt, but to compel him to reveal by guise and indirection the trade secrets and processes, both chemical and mechanical, of American Potash and Chemical Corporation to a competitor;'' and that any testimony given by the respondent in the premises would not only be contrary to the terms and conditions of said nondisclosure agreement, but would also be without authority and would constitute hearsay evidence, ''since all of said plans, specifications, drawings and other documents are in the possession of

the owner thereof, the American Potash and Chemical Corporation.''

The cause was heard before the circuit judge on September 10, 1959, upon the petition for citation for contempt, the answer of the respondent, and the motion of the respondent to set aside the order entered on July 24, 1959, honoring the so-called letters rogatory issued by the Supreme Court of Ontario, and the contempt citation issued by the circuit clerk on July 29, 1959. The record shows that the parties appeared by their attorneys of record and that at the conclusion of the hearing a judgment was entered sustaining the respondent's motion to set aside the order of the court entered on July 24, 1959, and dismissing with prejudice the petition for citation for contempt. The petitioner was granted a right of appeal to this Court.

The appellants' attorneys argue four points as grounds for reversal of the judgment of the lower court: (1) That the court erred in not requiring the appellee, W. H. McClanahan, Jr., to answer the questions that might have been put to him by the parties to the suit pending in the Supreme Court of Ontario wherein the Electric Reduction Company of Canada, Limited, was plaintiff, and George J. Crane was defendant; (2) that the court erred in not granting the relief prayed for by the appellant Shields Sims, Commissioner, in his petition for a citation for contempt for the refusal of the appellee to appear and answer the questions that might have been propounded to him by the commissioner; (3) that the court erred in entering an order dismissing, with prejudice, the petition of said commissioner for citation of the said McClanahan for contempt; and (4) that the court erred in sustaining the motion of the respondent, W. H. McClanahan, Jr., to set aside the order of the circuit court of July 24, 1959, and to set aside the contempt citation issued for the said respondent on July 29, 1959, in the absence of any testimony or other proof be-

ing introduced before the court in support of the several allegations of said motion.

The term "letters rogatory" is defined in Bouvier's Law Dictionary (Rawle's 3d Rev.) p. 1935, Baldwin's Edition 1934, as follows:

"Letters Rogatory. An instrument sent in the name and by the authority of a judge or court to another, requesting the latter cause to be examined, upon interrogatories filed in a cause depending before the former, a witness who is within the jurisdiction of the judge or court to whom such letters are addressed * * *. Where the government of a foreign country, in which witnesses purposed to be examined reside, refuses to allow commissioners to administer oaths to such witnesses, or to allow the commission to be executed unless it is done by some magistrate or judicial officer there, according to the laws of that country, letters rogatory must issue.

"These letters are directed to any judge or tribunal having jurisdiction of civil causes in the foreign country, recite the pendency of the suit in court, and state that there are material witnesses residing there, whose names are given, without whose testimony justice cannot be done between the parties, and then request the said judge or tribunal to cause the witnesses to come before them and answer to the interrogatories annexed to the letters rogatory, to cause their depositions to be committed to writing and returned with the letters rogatory; 1 Greenl. Ev. Sec. 320. In letters rogatory there is always an offer, on the part of the court whence they issued, to render a mutual service to the court to which they may be directed, whenever required. The practice of such letters is derived from the civil law, by which these letters are sometimes called letters requisitory."

In Ex Parte Thomas Taylor, 110 Tex. 331, 220 S. W. 74, 9 A. L. R. 963, the Court said:

"The power of a proper court to honor the request of a court in an independent jurisdiction expressed by letters rogatory, for the use of its pro-

cess in aid of obtaining the deposition of a witness whose testimony is material in a cause pending in the latter, while perhaps not frequently called into exercise, is inherent, and does not depend upon statutes. It exists to prevent a failure of justice. It is related to the administration of justice in its best sense. Men, generally, owe the duty of giving their testimony to courts of justice in all inquiries where it may be material. Courts of justice of different countries or states, therefore, are, in aid of justice, under a mutual obligation to assist each other in obtaining testimony upon which the right of a cause may depend.''

■■ ■ The majority view seems to be that courts have inherent power to honor and to execute letters rogatory from another state or country, although, as in the case of the issuing of such letters, they have a discretion in the matter, not, however, to be exercised arbitrarily, and not bound under all circumstances to honor the request. Ex Parte Thomas Taylor, supra; State v. Bourne (1891), 21 Or. 218, 27 P. 1048; McKenzie's Case (1843), 2 Pars. Sel. Eq. Cas. (Pa.) 227, 1 Clark, 356; Robb's Petition (1892), 11 Pa. Co. Ct. 298; Doubt v. Pittsburgh & L. E. R. Co. (1897), 6 Pa. Dist. R. 238. See also Annotation 9 A. L. R. 969.

■■ ■ We have no statute in Mississippi which expressly confers jurisdiction on the circuit court, or any other court to issue letters rogatory. But Section 156, of the Mississippi Constitution of 1890, conferred on the circuit court original jurisdiction in all matters civil and criminal in this state not vested by the Constitution in some other court. The Circuit Court of Lowndes County, in our opinion, had jurisdiction to honor the request of the Supreme Court of Ontario and to appoint a commissioner to examine the witness under the letters rogatory, and upon proper showing to punish the witness for contempt for refusal to testify. But we think that no proper showing was made in this case that would have

justified the infliction of punishment upon the witness for his refusal to testify.

█ █ A witness cannot refuse to answer questions simply because he deems them incompetent or irrelevant, █ █ and the general rule is that the production of the evidence should be compelled if there is a possibility of its being competent, relevant, and material on the trial. However, it has been held that if the witness is interrogated concerning any matter which he deems improper, he may refuse to answer, and in such case the commissioner may report to the court, and the court will rule on the question, and the examination must be suspended until the court decides the matter.

█ █ In discussing the scope of the examination of a witness whose testimony is to be used in a cause pending in another jurisdiction, the textwriter in 26A C. J. S., 389 and 390, Depositions, par. 67b, says:

"A party has no greater privilege in taking a deposition, with respect to the scope of the examination, than he would have on the trial of the case under the same state of the pleadings and issues. The examination should not be a prying expedition into the adversary's case, or be based on an assumed state of facts; and, in the absence of special circumstances, the witness cannot be examined with respect to papers or instruments not referred to in the notice or interrogatories, or as to which there is no opportunity to cross-examine.

\* \* \*

"In examinations conducted for use in a cause pending in another jurisdiction, matters pertaining to the competency or admissibility of the evidence sought to be elicited will be left for the determination of the foreign court. However, under this rule a court may not completely renounce its control of a proceeding being conducted under its process, and testimony sought to be elicited must not appear to be entirely irrelevant, and a confidential relation-

ship may be protected on the grounds of public policy.''

In the case of Crocker-Wheeler Co. v. Bullock, 234 F. 241, C.C.S.D. Ohio (1904), the Court held that on the taking of a deposition de bene esse in another federal district under Rev. St. Sec. 863 (U. S. Comp. St. 1901, p. 661), ■■ ■ the witness may assert his legal privilege to refuse to give testimony or to produce documents called for the same as though examined in open court, and in such case he has a right to be heard before the court in such district, and to have his claim of privilege determined by such court, before being compelled to answer or produce the documents. The Court also held in that case that, a witness has a legal privilege to refuse to give testimony sought, or to produce documents called for, where such testimony or documents will disclose trade secrets, and where the evidence is irrelevant or otherwise inadmissible in the case.

The Court in its opinion in that case quoted the following statement from Wigmore on Evidence, Vol. 3, par. 2212:

''In a day of prolific industrial invention and free economic competitions it may be of extraordinary consequence to the master of an industry that his process be kept unknown from his competitors, and that the duty of a witness be not allowed to become by indirection the means of ruining an honest and profitable enterprise. * * * Accordingly there ought to be, and there is, in some degree, a recognition of the privilege not to disclose that class of facts which, for lack of a better term, have come to be known as 'trade secrets.' * * *

''What the state of the law actually is would be difficult to disclose precisely. It is clear that no absolute privilege for trade secrets is recognized. On the other hand, courts are apt not to require disclosure except in such cases and to such extent as may appear to be indispensable for the ascertain-

ment of truth. More than this in definition can as yet hardly be ventured.''

In discussing the qualified privilege of a witness to refuse to give testimony where such testimony will disclose trade secrets, the textwriter in 98 C. J. S., 279, Witnesses, par. 446b, says: ''If disclosure will depreciate its value, a witness has a qualified, but not an absolute, privilege of refusing to disclose a trade secret; he should not be compelled to disclose such secret where to do so is not essential to the ends of justice, as where the testimony sought is irrelevant or otherwise immaterial, or is sought in a proceeding to restrain the disclosure of the secrets involved. Where, however, a trade secret is relative to an issue and disclosure essential to a correct determination, a witness is not privileged to refuse to disclose it.'' Huessener v. Fishel & Marks Co., 281 Pa. 535, 127 A. 139; Crocker-Wheeler Co. v. Bullock, supra; Taylor Iron & Steel Co. v. Nichols, Ch., 65 A. 695; Gossman v. Rosenberg, 237 Mass. 122, 129 N. E. 424.

In Perfect Measuring Tape Co. v. Notheis (1953), 93 Ohio App. Rep. 507, 114 N. E. 2d 149, the Court held that where particular trade secrets of an employer, as distinguished from general secrets of trade, have been entrusted to an employee in confidence in the course of his employment, the law implies an obligation on such employee not to disclose or use such trade secrets in any manner that would amount to a breach of that confidence or of good faith. In its opinion in that case the Court said:

''It should be observed also that at the time the depositions were taken the issues were not made up on the pleadings and plaintiff had not made any showing in support of the allegations in its petition, including the allegations that plaintiff's business embraced certain trade secrets and that they were surreptitiously taken by defendants. It appears to follow that plaintiff must at least make a prima

facie showing in support of its petition that it has business or trade secrets which were wrongfully appropriated by defendants before it can claim the right to pry out or curiously inspect the alleged trade secrets of defendants.''

It is argued on behalf of the appellants in this case that the appellee offered no testimony in support of the several allegations of his motion to dismiss the citation for contempt; that nowhere else in the record is there any suggestion that the appellee would have been subjected to a line of questioning with respect to his dealings with or knowledge of ''the multi-polar cell constructed by American Potash Corporation near Aberdeen, Mississippi;'' and that there is no basis in the record for the appellee's assumption that he would have been interrogated concerning those matters, and such matters cannot with propriety be considered on this appeal.

But the appellants' attorneys, in their argument on that point, overlook the fact that the ground alleged by the appellant Sims in his petition for citation for contempt was that McClanahan had declined to answer questions on the subject of his dealings with and knowledge of the multi-polar cell constructed by American Potash Company near Aberdeen, for the reason that he had executed a non-disclosure agreement with respect to the work performed on said project; and no evidence was offered by the appellants during the hearing on the contempt charge to show that McClanahan had declined to answer any other questions.

The trial judge in our opinion had a right to conclude from the record that the purpose of the examination was to obtain evidence concerning the multi-polar cell constructed by American Potash Company at Aberdeen and the matters covered by the non-disclosure agreement referred to in the petition for citation for contempt and the respondent's answer to that petition.

 Before the court could adjudge the witness Mc-Clanahan to be in contempt for declining to answer questions on the subject of his dealings with the knowledge of the multi-polar cell constructed by American Potash Company, as to which he had entered into a non-disclosure agreement with the prime contractor, it was incumbent upon the appellants to make some showing that the testimony if allowed would be pertinent to the issues involved in the suit pending in the foreign court. 16 Am. Jur., 721, Depositions, par. 52. The appellants in this case made no such showing. We have no knowledge from the record in this case concerning the nature of that suit. No written interrogatories were attached to the petition filed in the Circuit Court of Lowndes County asking that the letters rogatory be honored. No copy of the pleadings in the suit pending in the Supreme Court of Ontario were filed or exhibited at the hearing before the commissioner, so far as the record shows, or at the hearing before the circuit court on the return of the citation for contempt. No statement was dictated into the record on behalf of the petitioner as to the nature of the evidence which the petitioner expected to develop as a result of the examination of the respondent, if he were compelled to testify.

 The court has the power in a case of this kind to punish a witness for contumacy or disobedience of its mandate. The court also has the power to control the proceeding being conducted under its process to the extent necessary to protect the witness from being forced to disclose unnecessarily trade secrets of his former employer in violation of a non-disclosure agreement. The appellee in this case had a right to have his claim of qualified privilege determined by the court. If the appellants wished to preserve their right to have the judgment of the lower court reviewed by this Court on appeal, it was incumbent upon the appellants to have the record show that the testimony sought to be elicited from the witness was "not entirely irrelevant" to the

issues involved in the suit in which the testimony was to be used; and this they failed to do.

For the reasons stated above, the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C. J.,* and *Lee, Ethridge* and *Gillespie, JJ.,* concur.