508 So.2d 1057 (1987)
The AMERICAN TOBACCO COMPANY
v.
The Honorable Gray EVANS and Ella Mae Howard Horton, and Nathan Randall Horton, Widow and Son of Nathan Henry Horton, Deceased, Individually and on Behalf of All Wrongful Death Beneficiaries of the Deceased.
Misc. No. 2341.
Supreme Court of Mississippi.
April 29, 1987.
Rehearing Denied May 20, 1987.
James E. Upshaw, Upshaw, Williams, Biggers, Page & Kruger, Sanders & Sanders, Greenwood, Edmonson, Biggs & Jelliffe, Jackson, for appellant.
Jack F. Dunbar, Janet G. Arnold-Wilson, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, Don L. Davis, Byrd, Davis & Eisenberg, Austin, Tex., Calvin R. King, Durant, Don Barrett, Barrett, Barrett, Barrett & Patton, Lexington, Fredrick B. Clark, Greenwood, Edwin Lloyd Pittman, Atty. Gen. by Robert L. Gibbs, Asst. Atty. Gen. and Al Nuzzo, Sp. Asst. Atty. Gen., Jackson, for appellees.
ROBERTSON, Justice, for the Court:

ON PETITION FOR WRIT OF PROHIBITION

I.
This case presents a sensitive question of first impression in this state: the discoverability of a manufacturer's trade secrets and other confidential research development or commercial information. For the reasons articulated below, we hold that, in the context of the facts and circumstances of this case, such information is discoverable by a party opponent, subject to a carefully drawn protective order prohibiting disclosure to unauthorized persons.

II.
This matter arises in the context of a civil action pending in the Circuit Court of Holmes County, Mississippi. In that action, Ella Mae Howard Horton and Nathan Randall Horton, (collectively "Horton") widow and son of Nathan Henry Horton, deceased, claim to be the wrongful death beneficiaries of Nathan Henry Horton. They have brought suit against the American Tobacco Company and a distributor of its tobacco products, alleging, inter alia, that Horton developed and died from lung cancer caused by smoking "Pall Mall" cigarettes. Plaintiffs seek substantial compensatory and punitive damages. The case has been set for trial on August 31, 1987.
*1058 On May 9, 1986, Horton served upon American written interrogatories, among which was Interrogatory No. 8 which reads:
8. Please identify, by scientific name, generic name and chemical formula, all additives, chemical or otherwise, in Pall Mall cigarettes and its wrapping paper, and;
(a) State whether or not each additive or material has ever been determined or suspected to be carcinogenic, cocarcinogenic, a tumor initiator, or to yield nitrosamines;
(b) Identify tests, analyses, or research you have conducted, or had conducted on your behalf, to determine the properties and/or health hazards of each additive or material.
On June 27, 1986, American filed its response objecting to Interrogatory No. 8 on several grounds, including that the information sought is confidential and proprietary and is irrelevant to the issues raised by Horton's claims.
On July 30, 1986, Horton filed a Motion to Compel American to disclose, among other things, the information sought by Interrogatory No. 8.
On August 13, 1986, American filed its Opposition to Plaintiffs' Motion to Compel. The Opposition was fully supported by an affidavit which established, among other things, that (1) "Pall Mall" is one of America's most popular brands of cigarettes; (2) "Pall Mall" cigarettes consist of flue-cured tobacco, air-cured tobacco, oriental tobacco, humectants, proprietary flavorings and paper wrapping; (3) American has never revealed so-called "additives" since it began manufacturing "Pall Mall"; (4) American enforces strict procedures to insure continued secrecy, including, but not limited to, (a) maintaining the formula books in a vault, (b) limiting access to such information to twenty employees, each of whom is bonded, (c) limiting the times these employees have access to the formula books, and (d) maintaining a written record of the period during which each of these employees has access to such information. The affidavit also established that certain of the flavorings used in "Pall Mall" cigarettes are purchased from outside "flavoring houses" that demand, as a contractual condition to such sale, non-disclosure of the contents of the flavorings. In short, American argued below, and here, that the identity of the ingredients of "Pall Mall" cigarettes is highly valuable proprietary information which, if disclosed would result in substantial economic injury to American. Revenue from the sale of "Pall Mall" cigarettes in the United States is said to account for a substantial portion of America's tobacco related income. American argued further that disclosure under any circumstances of the proprietary ingredients would jeopardize "Pall Mall's" unique flavor and characteristics and, as a consequence, would imperil "Pall Mall's" marketability as a competitive tobacco product.
In January of 1987, the Circuit Court announced that it would require American to disclose the "additives." Disclosure in fact was stayed pending submission of proposed protective orders, see Rule 26(d)(7), Miss.R.Civ.P., and on April 7, 1987, the Circuit Court entered a Protective Order requiring American to disclose the identity of the ingredients of "Pall Mall" cigarettes under certain conditions of protection. The protective order reads as follows:
On January 13, 1987, this Court entered an order directing the defendant, The American Tobacco Company, to answer in full Interrogatory No. 8 propounded to it by plaintiff. The information obtained by plaintiff as a result of American's answer is subject to the following protective order;
Such information shall not be disclosed to any third persons except that plaintiff's counsel may disclose such information to experts either retained and being consulted by plaintiff's counsel when plaintiff's counsel, in good faith, deems disclosure to such persons to be necessary to the preparation and trial of this case. The person or persons to whom such information shall be given shall under no condition supply such information to any other party without the written permission of this Court. Each person to *1059 whom such information is given shall be given a certified copy of this order and the disclosure of this information to any other person without such written permission shall subject the person giving such information to any other party to the penalties of contempt of court.
All persons in possession of the information provided shall maintain such information in a secure, enclosed storage receptacle, except when the documents are in use.
No person in possession of the information provided shall make such information available to any other person.
No person who is supplied with the information by plaintiff's counsel shall make or cause to be made any copies of any documents which contain the information provided.
American Tobacco shall furnish this information to Plaintiffs on or before 1 p.m. April 14, 1987.
ORDERED AND ADJUDGED on this the 7 day of April, 1987.
 Gray Evans
 Circuit Judge
American now applies to this Court for a writ of prohibition, in effect seeking reversal of the Circuit Court's disclosure order.

III.
The writ of prohibition exists in Mississippi as a common law remedy modified and controlled by Section 11-41-1, et seq., Miss.Code of 1972, as amended. Pearl River Valley Water Supply District v. Brown, 248 Miss. 4, 25, 158 So.2d 694, 695 (1963). The writ initiates an extraordinary proceeding traditionally geared to prohibit an inferior judge or court from exercising its jurisdiction improperly. As noted by this Court, however, its modern use is broad and encompasses
... situations where, even though the inferior court has jurisdiction, the superior court deems it necessary and advisable to issue the writ of prevent some palpable and irremedial injustice.
State v. Maples, 402 So.2d 350, 351 (Miss. 1981). See also Fondren v. State Tax Commission, 350 So.2d 1329, 1332 (Miss. 1977); State ex rel. Pittman v. Griffin, 450 So.2d 426, 429 (Miss. 1984) ("it is in the nature of appellate process"); Crittenden v. Town of Booneville, 92 Miss. 277, 45 So. 723 (1908).[1]
Quite clearly, while discovery controversies do not commonly fall within this category, questions such as the alleged "trade secret" status of discoverable material risk great and irremediable harm if left unsettled until conclusion of the case. In sum, we hold the procedural vehicle chosen by American appropriately vests this Court with jurisdiction to address and settle this question.

IV.

A.
We begin with the basics. We regard American's right to the information in question as a "property right" not because it seems so but because our law decrees it so.[2]See General Chemical Corp. v. Department of Environmental Quality Engineering, 19 Mass. App. 287, 474 N.E.2d 183, 185-86 (1985). Property, a creation of law, is not defined by reference to a dictionary or any supposed common sense notion, nor is it a function of value. Property is a tangible or intangible that which our law protects from interference. International News Service v. Associated Press, 248 U.S. 215, 246, 39 S.Ct. 68, 75, 63 L.Ed. *1060 211, 223 (1918) (Holmes, J., concurring). But see E.I. DuPont DeNemours Powder Co. v. Masland, 244 U.S. 100, 102, 37 S.Ct. 575, 61 L.Ed. 1016, 1019 (1917). Trade secrets possess enough of the attributes of property to be subject to security interests as general tangibles. Miss. Code Ann. § 75-9-106 (1972). Suffice it to say that our law grants American great protections from interference with or access to the information at issue. See Electric Reduction Company of Canada, Ltd. v. Crane, 239 Miss. 18, 31-32, 120 So.2d 765, 770-71 (1960); Cataphote Corporation v. Hudson, 444 F.2d 1313, 1315-17 (5th Cir.1971). Neither the curious nor the meddlers nor the do-gooders may invade American's property right absent some (for the moment) superior right also emanating from our positive law.

B.
The rights of access invoked by Horton are claimed under Rules 26 and 33 of the Mississippi Rules of Civil Procedure. Horton points generally to Rule 26(b)(1):
(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(1) In General. Parties may obtain discovery regarding any matter not privileged, which is relevant to the issues raised by the claims or defenses of any party. The discovery may include the existence, description, nature, custody, condition and location of any books, documents or other tangible things; and the identity and location of persons having knowledge of any discoverable matter; and the oral testimony of witnesses. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
By virtue of Rule 33, interrogatories are one procedural mechanism for obtaining information within the scope of Rule 26(b)(1).
The complaint alleges a strict liability tort claim that American sold and distributed Nathan Henry Horton an unreasonably dangerous or defective product and that Horton's use of that product led to his demise. See Coca Cola Bottling Co. v. Reeves, 486 So.2d 374, 377-78 (Miss. 1986); Toliver v. General Motors Corp., 482 So.2d 213, 214-19 (Miss. 1985); Restatement (Second) of Torts § 402A. American attempts forcefully though speciously to redefine that claim and to do so quite restrictively. American's version of Horton's claim is that the smoke caused Nathan Henry Horton's death, thus rendering irrelevant the identification of the additives contained in the cigarettes and paper.
It requires little imagination to see the mischief that might result from allowing a party to define the contours of his adversaries' claim of defense and thus limit discovery. Within the limits of stating a claim upon which relief may be granted, see, e.g., Canton Farm Equipment, Inc. v. Richardson, 501 So.2d 1098, 1103 (Miss. 1987), it is the plaintiff's prerogative to define his claim.[3]
The courts of this state are ill equipped to determine in advance of discovery whether these or any other plaintiffs need access to the chemical components of the cigarettes  as distinguished from the contents of the smoke produced by smoking the cigarette  in order to make their case. That judgment must, as a matter of institutional fairness and practical necessity, be left to the persons best equipped competently to make it. Those persons are plaintiffs and their counsel for it is upon their shoulders that our law places the burden of proving all of the elements of their products liability claim.
We say this in the context of Horton's complaint charging that "Pall Mall" cigarettes are a defective and unreasonably *1061 dangerous product which caused the death of Nathan Horton due to lung cancer. To establish their claim that the product is defective, Horton insists that she have access to the components of "Pall Mall" cigarettes. She states that she intends to use this information to obtain an evaluation by experts as to whether any of the ingredients are defective or unreasonably dangerous for their intended use, something she certainly must establish in order to prevail on her strict liability claim. See Restatement (Second) of Torts § 402A. Horton also claims that the information sought is necessary in order that she might have an expert determination as to whether any ingredients other than tobacco found in the "Pall Mall" cigarettes are toxic or carcinogenic so as to establish a proximate cause link between the product and Nathan Horton's lung cancer.
We emphasize that judicial determination of necessity is both legally inappropriate and practically impossible. Nothing in our law requires any objective demonstration of necessity before a party may obtain discovery of information held by a party opponent. What  and all  that is necessary for discoverability is that the information lie within the scope of Rule 26(b)(1), a rule which contains no mention of the word or concept of necessity.
In sum, we have little difficulty concluding that the information sought is discoverable within Rule 26(b)(1). By reason of the nature of the claims Horton has asserted, the information sought in Interrogatory No. 8 regarding the additive in "Pall Mall" cigarettes and its wrapping paper is relevant to the issues raised by Horton's claims or American's defenses. We do not see how anyone could doubt that the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
It is no answer to say that the interrogatories call for disclosure of trade secrets, thus somehow placing the information beyond the scope of Plaintiffs' discovery rights. There is no trade secrets exception to the general scope of discovery as defined by Rule 26(b)(1). See, e.g., Federal Open Market Committee v. Merrill, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813, 61 L.Ed.2d 587, 604 (1979); Centurion Industries, Inc. v. Warren Steurer & Associates, 665 F.2d 323, 325 (10th Cir.1981); Coca-Cola Bottling Co. of Shreveport, Inc. v. The Coca-Cola Company, 107 F.R.D. 288, 292 (D.Del. 1985).

C.
The question of discoverability being answered  solely by reference to Rule 26(b)(1), the more difficult question arises. Because we deal with information in which American possesses property rights, limitations upon Horton's use of the information are appropriate, limitations which in our view are American's entitlement not by virtue of the harmful effects of disclosure but by reason of American's proprietary rights in the information. Respect for those rights is no doubt the source of Rule 26(d)(7), Miss.R.Civ.P., which provides that
upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justices requires ... that a trade secret or other confidential research, development or commercial information not be disclosed or be disclosed only in a designated way.
It being our view that the information sought constitutes "a trade secret or other confidential research, development or commercial information," we hold that the Circuit Court correctly held that American Tobacco was entitled to a Rule 26(d)(7) protective order. The important question then becomes the content of that order.
At the hearing held April 21, 1987, the Court repeatedly invited American to comment upon the adequacy of the Circuit Court's protective order. With the exception of a suggestion that a bond be required to assure Horton's compliance with the protective order, American declined the invitation.
We consider that the contents of the protective order are the primary responsibility of the Circuit Court, which has considerable discretion in the premises. We *1062 will interfere only where there has been an abuse of that discretion. The Circuit Court rejected American's bond condition. We cannot say this action was unreasonable. Beyond that, we decline to disturb or modify any of the provisions of the protective order, in large part because American has called to our attention no specific modifications or changes that reasonably ought to be made.
American's petition for writ of prohibition is denied. In taking this action we would emphasize the continuing authority of the Circuit Court to monitor discovery of the sensitive matters at issue. American has property rights in the information sought. That Court has substantial authority in the premises by virtue of Rule 26(d) and otherwise. Seattle Times Company v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984); Anderson v. Cryovac, Inc., 805 F.2d 1 (1st Cir.1986). It may act, upon motion of a party or sua sponte, for American is entitled to the sensitive and vigilant and continuing aid of the Circuit Court to the end that the information ordered disclosed never fall into the hands of unauthorized persons.
WRIT OF PROHIBITION DENIED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] This is analogous to the scope of review of denials of injunctive relief whereby "a party seeking review also must show that the order will be a `serious, perhaps irreparable, consequence,' and that the order can be `effectively challenged' only by immediate appeal." Stringfellow v. Concerned Neighbors In Action, ___ U.S. ___, 107 S.Ct. 1177, 94 L.Ed.2d 389, 400 (1987), citing Carson v. American Brands, Inc., 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Compare Sonford Products Corp. v. Freels, 495 So.2d 468, 471 (Miss. 1986).
[2] See 12 Business Organizations, Milgrim On Trade Secrets, § 1.01[2] fn. 15 (1986) and accompanying text, to the effect that

Practically all jurisdictions have recognized that a trade secret is property, or, stated otherwise, that the possessor of a trade secret has a property right in it.
[3] By analogy we have held in criminal discovery that it is the defendant's prerogative to determine whether information sought in discovery is relevant, not the prosecutor from whom the discovery is sought. See White v. State, 498 So.2d 368, 370 (Miss. 1986); Foster v. State, 493 So.2d 1304, 1308 (Miss. 1986); Johnson v. State, 491 So.2d 834, 837 (Miss. 1986); Hentz v. State, 489 So.2d 1386, 1388 (Miss. 1986).