UNION CARBIDE CORPORATION,
Appellant,

v.

Bob K. MARTIN, Appellee.

No. 05–09–01052–CV.

Court of Appeals of Texas,
Dallas.

July 13, 2011.

Kevin Michael Jordan, Macey Reasoner Stokes, Amy Pharr Hefley, Baker Botts L.L.P., Stephen G. Tipps, Houston, for Appellant.

Gregory Neill Jones, Boyar Miller, Derek D. Bauman, Franklin Cardwell & Jones, LLP, Houston, for Appellee.

Before Justices MURPHY, FILLMORE, and MYERS.

## OPINION

Opinion By Justice FILLMORE.

In a single issue, appellant Union Carbide Corporation asserts the trial court abused its discretion in assessing an $11,250 sanction against it for discovery abuse. We reverse the trial court's judgment and vacate the June 23, 2009 order imposing the monetary sanction.

### Background

Appellee Bob K. Martin filed a personal injury lawsuit against Union Carbide and other defendants in a Mississippi state court, claiming that exposure to the defen-

dants' asbestos-containing products caused him to develop asbestosis (the Mississippi lawsuit). The Mississippi lawsuit is one of hundreds of asbestos lawsuits in Mississippi state courts in which Martin's counsel represent plaintiffs. The Mississippi lawsuit was set for trial on August 24, 2009. In advance of that trial setting, counsel for Union Carbide prepared to take the deposition of Richard Tannen, M.D., a retained expert for Martin. Dr. Tannen, a pulmonologist hired by Martin's attorneys to screen x-rays of hundreds of persons in Texas and Mississippi for asbestos-related diseases, resides in Dallas County, Texas. Martin's counsel agreed to produce Dr. Tannen for deposition in the Mississippi lawsuit, and the parties to the suit agreed the deposition would be taken on June 17, 2009.

In a May 29, 2009 teleconference in the multi-district asbestos litigation pending in a federal district court of Pennsylvania (MDL), Martin's counsel argued that Union Carbide should not be allowed to use documents Dr. Tannen produced pursuant to an MDL subpoena duces tecum as evidence in the Mississippi lawsuit, and Un-

ion Carbide should be required to issue a separate subpoena duces tecum in the Mississippi lawsuit. Union Carbide's counsel indicated that it would proceed in that manner and advised Martin's counsel that the subpoena duces tecum to be served on Dr. Tannen in the Mississippi lawsuit would have the same content as one previously served on Dr. Jay Segarra, another screening expert hired by Martin's counsel. Union Carbide forwarded the form of the subpoena duces tecum by telecopy to Martin's counsel on June 1, 2009, in order to provide advance information regarding the documents and records to be produced by Dr. Tannen at his June 17, 2009 deposition.[1]

In order to obtain the Mississippi lawsuit subpoena duces tecum requested by Martin's counsel, Union Carbide filed on June 4, 2009, a notice in the Mississippi lawsuit to take Dr. Tannen's deposition in Dallas, Texas on June 17, 2009. Since Dr. Tannen was a nonparty witness residing outside Mississippi, Union Carbide filed on June 9, 2009, an ex parte request in the Mississippi lawsuit for letters rogatory.[2]

---

1. Union Carbide does not dispute that Martin's counsel did not agree to the breadth or scope of documents and records to be the subject of a subpoena duces tecum served on Dr. Tannen. The attorneys representing Martin, as well as other plaintiffs in the MDL and Mississippi state court asbestos cases, argued that objections had been made to the subpoena duces tecum for Dr. Segarra's deposition in the MDL. The record establishes that the scope and breadth of the subpoena duces tecum served on Dr. Segarra was the subject of an order in the MDL after the sanctions order entered by the Dallas district court. According to the record, the June 26, 2009 order in the MDL expanded the scope of a subpoena duces tecum to Dr. Segarra to include production of the files of persons screened by Dr. Segarra as potential plaintiffs in asbestos litigation, even if the individuals screened are not parties to cases in the MDL. According to Union Carbide's motion for new trial following the order of sanctions in the

Dallas district court, the expansion of the scope of the permissible subpoena duces tecum to Dr. Segarra necessarily suggested that the documents and records sought from Dr. Tannen concerning all persons screened for litigation would be discoverable in the MDL.

2. " 'Letters rogatory' indicates a formal communication from a court in which an action is pending to a foreign court requesting that the testimony of a witness residing in such foreign jurisdiction may be taken under the direction of the court addressed and transmitted to the court making the request." 26B C.J.S. *Depositions* § 34 (2001); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 20.002 (West 2008) ("If a court of record in any other state or foreign jurisdiction issues a mandate, writ, or commission that requires a witness's testimony in this state, either to written questions or by oral deposition, the witness may be compelled to appear and testify in the same

The letters rogatory was signed by the Mississippi trial court on June 9, 2009, authorizing the deposition of Dr. Tannen. The letters rogatory directed to the Dallas County District Court referenced the August 24, 2009 trial setting of the Mississippi lawsuit and requested the Dallas court's assistance in issuing a subpoena duces tecum to Dr. Tannen for production of information for use in the Mississippi lawsuit.

Union Carbide then filed the "miscellaneous action" underlying this appeal on June 9, 2009, to effectuate the Mississippi state court's letters rogatory, requesting that the subpoena duces tecum be issued to Dr. Tannen. Consistent with the parties' agreement to depose Dr. Tannen on June 17, 2009, the subpoena duces tecum requested that responsive documents be produced at the deposition. Pursuant to the subpoena duces tecum, Dr. Tannen was to produce, among other things, "[a]ll files, including but not limited to patient files, relating to the testing, screening or diagnosing of any person." The subpoena duces tecum defined "client" or "person" as "any person which [Dr. Tannen has] rendered services to or for at any time, including but not limited to, diagnostic testing, medical screening or other testing performed." Martin's attorney was served electronically with the notice of Dr. Tannen's deposition and with a copy of the subpoena duces tecum at about 10:30 a.m. on June 10, 2009. Dr. Tannen was served with the subpoena duces tecum at 1:30 p.m. on June 10, 2009. Dr. Tannen contacted Martin's counsel after he was served with the subpoena duces tecum, complaining that the subpoena duces tecum encompassed records that spanned his over thirty-year medical practice.[3]

On Monday, June 15, 2009, Martin filed an emergency motion for protective order and to quash the subpoena duces tecum, as well as a motion for sanctions, asserting that the subpoena duces tecum was unduly burdensome. Although Martin's counsel received the pro forma subpoena duces tecum on June 1, 2009 and received the actual subpoena duces tecum electronically on Wednesday, June 10, 2009, Martin's attorney in Dallas who filed the motions stated that he received the information he needed to respond to the subpoena duces tecum on Friday, June 12, 2009, and worked Friday, Saturday, and Sunday preparing the omnibus motion for protective order, motion to quash the subpoena duces tecum, and motion for sanctions. That attorney asserted that as soon as he became aware of the subpoena duces tecum, he had to "drop everything" and devote his

manner and by the same process used for taking testimony in a proceeding pending in this state."). Mississippi does not have a statute which expressly confers jurisdiction on the circuit court to issue letters rogatory, "[b]ut Section 156, of the Mississippi Constitution of 1890, confer[s] on the circuit court original jurisdiction in all matters civil and criminal in this state not vested by the Constitution in some other court." *Elec. Reduction Co. of Can., Ltd. v. Crane*, 239 Miss. 18, 120 So.2d 765, 769 (1960). The trial judge in the action underlying this appeal expressed concern that letters rogatory are obtained ex parte in Mississippi state courts. However, the trial judge was advised by counsel for Union Carbide that obtaining the letters roga-

tory ex parte was the usual custom and practice in Mississippi state courts.

3. The Deposition Subpoena Duces Tecum, Exhibit C to the letters rogatory, specifically provided that Dr. Tannen had "the right to object at any time prior to the date set forth in the subpoena for compliance" and further stated:

Should you choose to object, you should communicate such objections in writing to the party causing the issuance of this subpoena and stating, with respect to any item or category to which objection is made, your reasons for such objection.

sole and undivided attention to preparing the motions.

In the motions, Martin requested that the trial court quash the subpoena duces tecum on the grounds that the document request was a fishing expedition; that it was overbroad, harassing, and annoying; that it improperly requested asbestos litigation screening documents for patients other than Martin; and that compliance would be unduly expensive. Martin also filed a withholding statement pursuant to rule of civil procedure 193.3 asserting the subpoena duces tecum demanded Dr. Tannen disclose privileged information between him "and his patients and other individuals who are in no way related to the [Mississippi] lawsuit" and regarding legal services provided Dr. Tannen by his personal attorneys. *See* TEX.R. CIV. P. 193.3. Martin requested that the trial court enter an order of sanctions against Union Carbide, awarding Martin his costs in defending against the subpoena duces tecum. According to Martin's counsel, he spent at least thirty hours preparing the motions, and a reasonable attorney fee of $375 per hour was appropriate for the work he performed. Given what Martin characterized as Union Carbide's "obvious misconduct" in violation of Texas law, Martin requested he be awarded $10,000 for costs and expenses as a sanction against Union Carbide.

Union Carbide first learned of Martin's motions and objections to the scope of the subpoena duces tecum when Union Carbide was served with copies of Martin's motions on June 15, 2009. Union Carbide's counsel made several attempts to contact Martin's counsel by telephone and forwarded electronic correspondence to Martin's counsel stating a willingness to withdraw the subpoena duces tecum. Martin's counsel never responded. That evening, Union Carbide's counsel circulat-ed a proposed pleading to all counsel withdrawing the subpoena duces tecum and voluntarily nonsuiting the miscellaneous action in the Dallas district court. On Tuesday, June 16, 2009, in advance of the hearing on Martin's motions, Union Carbide filed its notice of withdrawal of the subpoena duces tecum and voluntary dismissal of the miscellaneous action "due to the impending trial date and tight deadlines set forth in the scheduling order" in the Mississippi lawsuit. According to Union Carbide's pleading, Dr. Tannen's deposition would proceed on Wednesday, June 17, 2009, and Union Carbide would rely only on documents previously obtained.

Martin proceeded with the hearing on his motions for protective order, to quash the subpoena duces tecum, and for sanctions as scheduled on June 16, 2009. The trial court took under advisement the motion for sanctions. The trial court stated at the hearing that if sanctions were imposed, the sanctions had "to be tailored to the incident," and "they have to be some sort of function of the attorney's fees...." With regard to Martin's motion to quash the subpoena duces tecum, the trial court noted that Union Carbide had withdrawn the subpoena duces tecum and instructed the parties that Dr. Tannen was not required to produce any documents at his deposition on June 17, 2009. The trial court did not grant Martin's motion for protective order and did not place topical limitations on the scope of Dr. Tannen's deposition. The trial court advised the parties that if Dr. Tannen was asked for information he believed was privileged, he could assert the privilege and refuse to answer the question, and Union Carbide could thereafter seek an order compelling Dr. Tannen to answer if it disagreed with the assertion of privilege and refusal to answer. Dr. Tannen's deposition proceeded on June 17, 2009 as noticed.

Also on June 17, 2009, the trial court signed an order sanctioning Union Carbide in the amount of $11,250. On June 22, 2009, Martin filed a motion to modify the June 17, 2009 sanction order. Martin asked the trial court to correct typographical errors in the order, revise the date by which Union Carbide was to pay the sanction to Martin's counsel, and include reference to the trial court's plenary power over Martin's motion for sanctions because it was filed before Union Carbide's notice of non-suit. *See* Tex.R. Civ. P. 162; *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 864 (Tex.2010) (trial court may consider motions for sanction pending at time of dismissal).

The trial court signed the modified order of sanctions that is the subject of this appeal on June 23, 2009. In that order, the trial court concluded the subpoena duces tecum was overbroad, unduly burdensome, and harassing because it requested that Dr. Tannen produce "every document concerning *every* patient he has *ever* tested, screened or diagnosed, including private patient medical files for such non-parties." (Emphasis in original.) The trial court found, "by reasonable inference," that Union Carbide "intentionally orchestrated a plot to send a patently overbroad and harassing discovery request to a witness with the specific purpose of affording [Dr. Tannen and Martin] inadequate, if any, time to seek relief therefrom." The trial court provided the following support for that "reasonable inference":

(i) the request for the deposition and document production was made *ex parte,* with the understanding that they would be signed *pro forma;* (ii) this cause was

filed the same day as the Mississippi Court signed the Order; (iii) [Dr. Tannen's and Martin's] Counsel was not served until the day after the Order was signed [in the Mississippi lawsuit]; (iv) the witness was served with the notice within hours after [Martin's] counsel was notified of the request and Order; (v) and that the deposition was noticed for a mere 7 days after service. . . .

The trial court found that by affording Dr. Tannen "a mere 7 days to produce the documents," instead of the thirty days the trial court stated was required under the rules of civil procedure, "Counsel for Union Carbide intentionally schemed to afford as little time as possible for the witness to comply" with the "voluminous document request."[4] The trial court found it was necessary for Martin's counsel to expend at least thirty hours to respond "to the situation" and that $375 was a reasonable hourly rate, resulting in "at least $11,250.00 in attorney's fees expended." Pursuant to rule 215 of the rules of civil procedure and the inherent authority of the court, the trial court found that a monetary sanction in the amount of $11,250 "representing compensatory measures to respond to the discovery request" was appropriate. The trial court ordered Union Carbide to pay the attorney who filed Martin's motions the sum of $11,250 no later than noon the following day.

On July 16, 2009, Union Carbide filed its motion for new trial and reconsideration of the sanctions order, which was heard on August 24, 2009. No written order was signed by the trial court denying Union Carbide's motion, and the motion for new trial was overruled by operation of law.

---

4. The trial court acknowledged that the proper scope of the subpoena duces tecum might be a matter for the Mississippi court. However, the trial court ruled based on its finding that the Texas Rules of Civil Procedure control the timing of the subpoena duces tecum and require that the deponent be given at least thirty days to respond.

Union Carbide filed this appeal of the trial court's June 23, 2009 modified order of sanctions.[5]

### Standard of Review

 We review the issuance of discovery sanctions under an abuse of discretion standard. *TransAmerican Nat'l Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding); *Response Time, Inc. v. Sterling Commerce (N. Am.), Inc.*, 95 S.W.3d 656, 659 (Tex.App.-Dallas 2002, no pet.). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but "whether the court acted without reference to any guiding rules and principles." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex.1985). In order to determine whether a trial court abused its discretion in exercising its authority to impose sanctions, appellate courts review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *See Response Time*, 95 S.W.3d at 659.

### Analysis

The trial court justified a monetary sanction against Union Carbide based upon rule 215 of the rules of civil procedure and the trial court's inherent authority. We address each of these bases for the sanction order separately.

#### *Rules of Civil Procedure*

 Rule of civil procedure 215.3 authorizes a trial court to impose sanctions on a party who abuses the discovery process in seeking, making, or resisting discovery. Tex.R. Civ. P. 215.3. If a court finds under rule 215.3 that a party is abusing the discovery process in seeking discovery or if the court finds a request for inspection or production of documents is unreasonably frivolous, oppressive, or harassing, it may impose any appropriate sanction authorized by rules 215.2(b)(1), (2), (3), (4), (5), and (8). Tex.R. Civ. P. 215.3; *see also In re Reece*, 341 S.W.3d 360, 367 (Tex.2011) (orig. proceeding) (rules of civil procedure make available the possibility of a range of sanctions for discovery abuse).

 Discovery sanctions serve to secure compliance with the discovery rules, deter other litigants from abusing the discovery rules, and punish those who violate the discovery rules. *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.-Dallas 2009, pet. denied). "In examining whether the trial court has abused its discretion, we must be able to determine not only that the trial court's decision to sanction the conduct at issue was proper, but that the sanction the trial court chose was just." *Stromberger v. Turley Law Firm*, 251 S.W.3d 225, 227 (Tex.App.-Dallas 2008, no pet.). An appellate court applies the factors enunciated in *TransAmerican Natural Gas* to determine whether an imposition of sanctions is just: first, a direct relationship must exist between the offensive conduct and the sanction imposed; and second, a just sanction must not be excessive and "should be no more severe than necessary to satisfy its legitimate purposes." 811 S.W.2d at 917; *see also Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex.2003) (sanction must bear direct relationship to offensive conduct and must not be excessive or more severe than necessary). To be just, a sanction must be

---

**5.** The trial court's June 23, 2009 order is the final judgment in this matter, and the order specifically provides that it "is a final appealable Order."

directed against the abuse and toward remedying the prejudice caused by the conduct. *Mayer,* 104 S.W.3d at 882. A sanction imposed for discovery abuse must not be excessive and must "fit the crime." *Id.; Stromberger,* 251 S.W.3d at 227.

■ The supreme court has repeatedly stated that a permissible sanction should be no more severe than required to satisfy the legitimate purposes of discovery. *See Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992) (orig. proceeding); *TransAmerican Nat'l Gas,* 811 S.W.2d at 917. This means a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse. *Blackmon,* 841 S.W.2d at 849; *see also Cire v. Cummings,* 134 S.W.3d 835, 842 (Tex.2004) (trial court must analyze available sanctions and offer reasoned explanation for appropriateness of sanction imposed). Punishment, deterrence, and securing compliance with discovery rules are valid reasons to impose sanctions. *See Blackmon,* 841 S.W.2d at 849; *Westfall Family Farms, Inc. v. King Ranch, Inc.,* 852 S.W.2d 587, 591 (Tex. App.-Dallas 1993, writ denied). Lesser sanctions must first be tested to determine whether they are adequate to secure compliance, for deterrence, and for punishment of the offender. *Blackmon,* 841 S.W.2d at 849; *see also Hamill v. Level,* 917 S.W.2d 15, 16 n. 1 (Tex.1996) (Texas Supreme Court specifically disapproved of court of appeals' conclusion that *Blackmon* was an anomaly to extent *Blackmon* held lesser sanctions must first be tested before

"death penalty" sanctions could be imposed).

The trial court awarded attorney's fees as a sanction against Union Carbide. The rules of civil procedure authorize courts to award attorney's fees as a sanction for abuse of the discovery process. *See* Tex.R. Civ. P. 215.2(b)(8); *see also Brantley v. Etter,* 677 S.W.2d 503, 504 (Tex.1984) (per curiam); *see also In re Reece,* 341 S.W.3d at 367. However, as indicated above, courts must consider the availability of less stringent sanctions before imposing severe sanctions and must consider whether such lesser sanctions would fully promote compliance with discovery rules. *TransAmerican Nat'l Gas,* 811 S.W.2d at 917; *see also GTE Commc'ns Sys. Corp. v. Tanner,* 856 S.W.2d 725, 729 (Tex.1993). Here, neither the record nor the sanctions order establishes that the trial court considered the availability of a less stringent sanction or whether a lesser sanction would promote compliance with discovery rules. Neither the record nor the sanctions order contains a statement by the trial court that lesser sanctions would not be effective. *See Tanner,* 856 S.W.2d at 729. In fact, the monetary sanction of $11,250 imposed by the trial court exceeded Martin's request for $10,000 in fees and expenses.[6]

The sanctions order recites that "Union Carbide schemed to afford as little time as possible for the witness to comply" with the subpoena duces tecum. The record also contains the trial court's statement of a "belief" that the subpoena duces tecum and the timing of that discovery constitut-

---

**6.** In Martin's motion for sanctions filed June 15, 2009, he requested that he be awarded $10,000 for costs and expenses as a sanction against Union Carbide. The trial court's June 17, 2009 sanctions order awarded the monetary sanction of $11,250. After the trial court signed the June 17, 2009 sanction order, Martin filed a memorandum in support of his motion for sanctions and a supplemental motion for sanctions, in which he increased his request for sanctions to not less than $15,000, stating, "[T]his Court has the authority to issue sanctions related to the subpoena duces tecum pursuant to its finding *today* that the subpoena was improper." (Emphasis added.)

ed "gamesmanship" on the part of Union Carbide. We have reviewed the entire record and conclude that it does not support these findings by the trial court. *See Blackmon,* 841 S.W.2d at 852–53 (reviewing entire record to determine whether any evidence supported trial court's findings).

Martin argued that the only purpose for the subpoena duces tecum was to harass Dr. Tannen, Martin, and Martin's counsel, and the fact that Union Carbide nonsuited its miscellaneous action shortly after Martin's motion for sanctions was filed demonstrates the subpoena duces tecum was served in bad faith and for purposes of harassment. However, the record establishes that parties to the Mississippi lawsuit were endeavoring to take discovery in advance of the approaching August 2009 trial setting. While there was subsequent concern on the part of Martin regarding the breadth and scope of the subpoena duces tecum served on Dr. Tannen, Martin received the pro forma subpoena at the beginning of June 2009 and made no objection to Union Carbide. Moreover, when the subpoena duces tecum was served on Martin's counsel and on Dr. Tannen on June 10, 2009, Martin's counsel did not notify Union Carbide of any objection. Not until June 15, 2009, when Martin filed and served his motions to quash, for protective order, and for sanctions, did Union Carbide know of Martin's objections. While Martin's attorney who filed the motions stated he worked on the motions from the time he learned of the need to respond to the subpoena duces tecum on June 12, 2009 through the filing of the motions on June 15, 2009, it is uncontroverted that an attorney or attorneys with the firm representing Martin were aware of the scope of the subpoena duces tecum well in advance of June 12, 2009.

Further, it is uncontroverted that Martin's counsel did not contact Union Carbide's counsel to confer regarding Martin's opposition to the subpoena duces tecum prior to filing the motions to quash the subpoena duces tecum, for protective order, and for sanctions. The local rules of the Dallas County civil district courts specifically require that prior to filing a motion, "counsel for the potential movant shall personally attempt to contact counsel for the potential respondent" in an effort to resolve disputed matters. DALLAS (TEX.) CIV. DIST. CT. LOC. R. 2.07(b) & (c). Further, the rules of civil procedure require a certificate of conference on all discovery motions or requests for hearings related to discovery. TEX.R. CIV. P. 191.2. The purpose of rule of civil procedure 191.2 is to ensure that parties cooperate during the discovery process and make reasonable efforts to resolve discovery disputes without the necessity of court intervention. *See In re Alford Chevrolet–Geo,* 997 S.W.2d 173, 184 (Tex.1999) (orig. proceeding); *see also* TEX.R. CIV. P. 191.2; DALLAS (TEX.) CIV. DIST. CT. LOC. R. 2.07(c) (even in emergency, motion must include certificate of conference setting out dates, times, methods, and results of contact or attempts to contact).

Martin's June 15, 2009 motions, including his motion for sanctions, did not contain a certificate of conference. Martin's counsel admitted that he failed to confer with counsel for Union Carbide prior to filing the motions. The record is also uncontroverted that once Union Carbide became aware of Martin's objections to Union Carbide's discovery and the motions filed by Martin, Union Carbide repeatedly attempted to reach Martin's counsel regarding Martin's objections to the discovery and to advise Martin's counsel that Union Carbide was willing to withdraw the subpoena duces tecum. However, Martin's counsel did not return Union Car-

bide's counsel's telephone calls or electronic mail communications to discuss the nonsuit of the subpoena duces tecum. Martin does not deny that the discovery dispute may have been avoided had Martin conferred as required by Local Rule 2.07 and rule of civil procedure 191. Martin's counsel offered no reason for not conferring with or responding to Union Carbide's counsel.

We do not conclude that the sanction order should be vacated based on Martin's failure to confer with Union Carbide in advance of the filing of his motions. However, we note that the time Martin expended in preparing the motions and the trial court's time expended in considering the motions and the reconsideration of the trial court's sanction order likely could have been avoided by Martin's compliance with Local Rule 2.07 and rule of civil procedure 191.

The trial court was required to consider lesser sanctions. In this case, the trial court failed to state that a lesser sanction or sanctions were considered and failed to explain why a lesser sanction or sanctions would not have been effective to promote compliance with the rules governing the discovery process. *See Jones v. Andrews,* 873 S.W.2d 102, 106 (Tex.App.-Dallas 1994, no writ) (permissible sanction should be no more severe than required to satisfy purpose and trial court should impose relatively less stringent sanctions first to determine whether the lesser sanctions will fully promote compliance and deterrence) (citing *Blackmon,* 841 S.W.2d at 849). On this record, we conclude the trial court abused its discretion by imposing the monetary sanction against Union Carbide pursuant to rule 215 of the rules of civil procedure.

*Inherent Authority of the Trial Court*

▬▬ The trial court ordered the monetary sanction against Union Carbide pursuant to rule 215 of the rules of civil procedure "and the inherent authority of" the trial court. A trial court has inherent power to impose sanctions. *See In re Bennett,* 960 S.W.2d 35, 40 (Tex.1997). This inherent power exists to enable a court to effectively perform its judicial functions and to protect its dignity, independence, and integrity. *See Eichelberger v. Eichelberger,* 582 S.W.2d 395, 398–99 (Tex.1979) (trial court has inherent power to take action that will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"). Inherent power to sanction exists where necessary to deter, alleviate, and counteract bad faith abuse of the judicial process, such as any significant interference with the traditional core functions of the court. *See Greiner v. Jameson,* 865 S.W.2d 493, 499 (Tex.App.-Dallas 1993, writ denied); *Lawrence v. Kohl,* 853 S.W.2d 697, 700 (Tex.App.-Houston [1st Dist.] 1993, no writ). The core functions of a trial court include hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgments, and enforcing judgments. *See Dallas Cnty. Constable Precinct 5 v. KingVision Pay–Per–View, Ltd.,* 219 S.W.3d 602, 610 (Tex.App.-Dallas 2007, no pet.).

▬▬ Assessing sanctions under the trial court's inherent powers involves a two-step process. First, the trial court should rely upon the rules and statutes expressly authorizing sanctions whenever possible, and second, the trial court, applying its inherent power to impose sanctions, must make factual findings, based on evidence, that the conduct complained of significantly interfered with the court's legitimate exercise of its core functions. *See Island Entm't Inc. v. Castaneda,* 882 S.W.2d 2, 5 (Tex.App.-Houston [1st Dist.] 1994, writ

denied); *see also Jameson,* 865 S.W.2d at 499 (for inherent power to apply, there must be evidence and findings that alleged bad faith abuse significantly interfered with trial court's legitimate exercise of one of its core powers); *In re K.A.R.,* 171 S.W.3d 705, 714 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (for trial court to have exercised its inherent power to sanction, there must have been some evidence that conduct of sanctioned party significantly interfered with trial court's legitimate exercise of one of its core functions).

 Even if the trial court abused its discretion by not first considering lesser sanctions against Union Carbide for discovery abuse pursuant to rule 215.3, this Court may still uphold the sanctions if they were valid on any other grounds supported by the record. *See Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex. App.-Dallas 1992, orig. proceeding). However, on this record, there is no finding supported by evidence that Union Carbide's conduct significantly interfered with the trial court's legitimate exercise of its core functions. We conclude the trial court abused its discretion by imposing the monetary sanction against Union Carbide pursuant to the trial court's inherent authority where there is no finding supported by evidence that Union Carbide's conduct interfered with the trial court's legitimate exercise of its core functions. *See Jameson,* 865 S.W.2d at 499.

### Conclusion

Considering Union Carbide's alleged violations of the rules governing the discovery process and the record as a whole, we conclude that the trial court abused its discretion by levying the sanction against Union Carbide in this case. The imposition of the sanction against Union Carbide amounted to such a denial of the party's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. *See* Tex. R.App. P. 44.1(a)(1); *Bruner v. Exxon Co.,* 752 S.W.2d 679, 682 (Tex.App.-Dallas 1988, writ denied). For the reasons discussed above, we sustain Union Carbide's sole issuing complaining of the trial court's June 23, 2009 sanctions order.

We reverse the trial court's judgment and vacate the trial court's June 23, 2009 sanctions order.